UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　　)<br>　v. 　　　　　　　　　　)　CAUSE NO.: 2:20-CR-149-JTM-JPK<br>　　　　　　　　　　　　　)<br>CLIFF DEREK URBAN, 　　　)<br>　　　　Defendant. 　　　　) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Cliff Derek Urban's Motion for Reconsideration of Order for Competency Evaluation [DE 71].

Defendant Cliff Derek Urban is charged with knowingly providing a false address when purchasing firearms, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A). [DE 4]. Urban was placed on conditions of pretrial release. [DE 20]. However, after a series of violations of those conditions of release, Urban was detained pending trial. [DE 62].

At a hearing on April 26, 2022, the Court granted the Government's motion for a hearing to determine whether Urban was competent to stand trial, and committed him to the custody of the Attorney General for a competency examination pursuant to 18 U.S.C §§ 4241 and 4247(b). During the hearing, the Court and defense counsel discussed concerns regarding the length and location of the commitment. Government counsel reported that the Metropolitan Correctional Center ("MCC") in Chicago had been consulted and would be able to examine him within the time limits prescribed by the statute.

Considering defense counsel's concerns and those representations, the Court ordered that the examination take place "in a suitable facility closest to the Court, unless impractical. That appears to be the [MCC]." The Court noted that pursuant to Section 4247(b), the period of commitment should not exceed 30 days, or 45 days with a showing of good cause. The Court

further ordered that the "thirty-day period shall be calculated from the day on which Defendant arrives at the facility, which shall not exceed seven days from the date of this order." Any request for the examination to be held on different terms had to be made by written motion. [DE 70].

On May 3, 2022, defense counsel filed the instant motion requesting reconsideration of the commitment order, noting that the Bureau of Prisons ("BOP") had advised the examination was going to occur in Colorado, and Urban had not yet been transported there. At a hearing on May 10, 2022, a BOP representative indicated that Urban was being held at a transfer facility in Oklahoma City, and the examination would not be completed within the time ordered by the Court. The Court ordered the BOP to show cause as to its compliance with the commitment order.

### Appropriate period of commitment under 18 U.S.C § 4247(b)

The Court's authority to order that a defendant be held for a competency evaluation is limited by 18 U.S.C. §§ 4241-4247. Upon a showing of "reasonable cause" to believe the defendant is unable to understand the nature and consequences of the proceedings or to assist properly in his defense, the Court "shall" order a competency hearing, and "may" order a competency evaluation. § 4241(a), (b). Further:

> [T]he court may commit the person to be examined for a reasonable period, but not to exceed thirty days . . . to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

§ 4247(b). Although there is "no sanction" merely for exceeding the time limits, *White v. United States*, 273 F. App'x 559, 565 (7th Cir. 2008), "[t]he victim of a violation of the deadlines in the commitment statute has plenty of protection," including the right to seek habeas corpus, or

2

dismissal if the unlawful confinement has prejudiced his defense. *United States v. Fuller*, 86 F.3d 105, 106-07 (7th Cir. 1996).

The BOP believes that the statutory 30-day period begins only when the person is transferred to the facility where the examination occurs. At the May 18 hearing, Dr. Dia Boutwell, the BOP's Chief of Psychological Evaluations, explained that a defendant will often be held at a "transfer facility" until the examining facility is ready to receive him. Once a defendant arrives at the examining facility, the BOP believes it has a further 30 days to complete the exam.

However, the Seventh Circuit has indicated that perhaps the entire period of detention should last no more than 30 days, or 45 days upon a showing of good cause. In an unpublished case, *United States v. Brown*, 627 F. App'x 558 (7th Cir. 2015), a defendant was detained for a competency evaluation for 161 days: 51 days at one facility, followed by 110 days at the examining facility. *Id*. at 560. The court observed that the "detention should have lasted no more than 45 days [under] 18 U.S.C. § 4247(b), but it lasted much longer—161 days." *Id*. at 559.  There is certainly some support for the proposition that every day of detention counts, regardless of whether it occurs at the examining facility. *See also Fuller*, 86 F.3d at 105 ("Section 4247(b), when read in conjunction with section 4241, fixes a 30-day limit on *pretrial commitments* for determinations of competency.") (emphasis added); *United States v. Rodriguez*, No. 3:21-CR-2110-BTM, 2021 WL 4776355, at *2 (S.D. Cal. Oct. 13, 2021) ("Section 4247(b) does not set a deadline for the completion of the exam; it only sets a limit on the time the defendant can be held in custody for the exam.").

The issue of when the thirty-day period begins is often of little consequence and therefore not raised, as in many cases the defendant is already detained pending trial or faces a long period of incarceration if convicted. However, in this case, Urban's counsel has requested that he be

3

returned to the Northern District of Indiana for examination, potentially under strict conditions of release. To the extent the Government's opposition is based on the argument that BOP remains in compliance with Section 4247(b) and this court's prior order by detaining Urban at a transfer facility, that argument is rejected.

### Urban's examination

Tracking the language of the statute, the Court ordered that unless impracticable, Urban's examination was to occur "in a suitable facility closest to the Court," which at that time appeared to be the MCC. [DE 70]. The Court also ordered that Urban be transported within 7 days; and that the examination be completed within 30 days of the end of the travel period, or 30 days after his arrival at the facility, whichever was sooner. *Id*. However, the BOP later advised that he would be examined in Englewood, Colorado, and as of May 18, Urban was being held at a transfer facility in Oklahoma City.

At the May 18 hearing, BOP representatives explained the factors bearing on the BOP's decision. The testimony established that placements were based on a chart that was updated at the end of each month. The agency considered placing Urban at the MCC, but declined to do so, because only one of its three forensic psychologists was available, and there was a backlog of cases. Further, Urban is a minimum security inmate; the MCC, unlike some other facilities, has maximum security capabilities; and the BOP did not want to give Urban a spot that could have held a maximum security inmate instead. No explanation was given as to the apparent contradiction between this information and the April 26 report that the MCC was able to examine

Urban. It appears likely that this was simply an issue of established procedures not including a real-time check of the MCC's current ability to accept Urban for a study.

Regardless of the location, the Government and BOP were clear that the examination will not be completed within the time ordered by the Court. In the Court's experience, mental health and competency exams often take much longer than 30 days, or even the 45 days permitted upon a showing of good cause. *See, e.g.*, *United States v. Thedford*, 2:19-cr-00164-JTM-JPK (258 days from order of commitment to submission of report, under slightly different circumstances and statutory authority); *United States v. Young*, 2:01-cr-00036-TLS-JPK (103 days).

The Court appreciates the candor and diligence of the various personnel – BOP, Marshals, and counsel – involved in this issue. It is also mindful of the "substantial deference" afforded to the BOP in matters of prison administration, including the power to determine where prisoners are housed. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Gee v. Cripe*, 853 F.2d 510, 511-12 (7th Cir. 1988). At the same time, the decision of whether a custodial examination is appropriate may depend on when and where the exam would take place.[1] In certain cases, those details need to be considered, and ideally, communicated to the parties and the Court.[2] Although this is most important for defendants who are not in custody, the same standard applies regardless of the defendant's custodial status. *See United States v. McDonald*, No. CRIM. 09-656-01 SDW, 2012 WL 4659242, at *2 (D.N.J. Oct. 1, 2012) ("For purposes of determining whether to commit a

---

[1] *See, e.g.*, *United States v. Deters*, 143 F.3d 577, 582 (10th Cir. 1998); *In re Newchurch*, 807 F.2d 404 (5th Cir. 1986); United States v. McDonald, No. CRIM. 09-656-01 SDW, 2012 WL 4659242 (D.N.J. Oct. 1, 2012); *United States v. Enriquez Frias*, No. R 05-484 JB, 2006 WL 1228938, at *2 (D.N.M. Feb. 28, 2006); *see also United States v. King*, No. 4:04-CR-71(2), 2007 WL 9706572, at *3-4 (M.D. Pa. Nov. 1, 2007) (directing that the defendant be transported to the appropriate facility within ten days of the date of the order of commitment).

[2] It was the Court's intent that by raising these issues at the initial hearing and specifically ordering that the examination take place within 30 days, it would be promptly apprised if the examination could not take place within the specified time. The Court appreciates that the Government has offered to facilitate communication with the BOP in instances where it is needed.

defendant for a mental examination, the statutory language of 18 U.S.C. § 4247(b) does not distinguish between defendants who are on pre-trial release and those currently in custody."). Even though Urban was ordered detained pending trial, the Court considered whether it is appropriate for him to be held in Oklahoma, then Colorado, for examination, or to pursue other means of examination in his home district, potentially under strict conditions of release.

Defense counsel advised that he has been unable to speak with Urban, who has no apparent connection to Colorado or Oklahoma, and receives only occasional reports from Urban's mother. Making no presumption about the length of any sentence that may be ultimately imposed in this case, the Court notes that the sentencing guidelines suggest a relatively short period of incarceration for the offenses charged. *See* U.S. Sentencing Guidelines Manual § 2K2.1. It is possible that even if convicted, any additional incarceration caused by this issue is time Urban would not otherwise have to serve.

It was for these reasons, combined with the representations at the April 26 hearing, that the Court ordered Urban promptly examined in the first place. There was an apparent misunderstanding, because although the record indicates that the MCC was consulted and would have accommodated Urban as of April 26, the individual who ultimately placed Urban in Colorado was working off of information that was only updated monthly. Coupled with a lack of resources, and through no fault of any individual who has taken part in hearings in this case, this resulted in an imminent failure to comply with this Court's prior order, and a possible failure to comply with the parameters set forth in Section 4247(b). For the reasons described above, Urban will be

returned to the Northern District of Indiana, and the parties should confer to determine an alternate method of examining him.

At the May 18 hearing, defense counsel was advised that, with Urban currently in Oklahoma, the examination might be completed more quickly in Colorado, on the BOP's timeline, than it would be in the Northern District of Indiana. The Court defers to defense counsel's opinion that it is in his client's interest to be returned to this district. In ordering his return, the Court does not presume that an examination under strict conditions of release is appropriate, although it could be ordered under 18 U.S.C. § 3142(i) ("The judicial officer may, by subsequent order, permit the temporary release of the person . . . to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.").

## Detention

The Court notes that Urban is currently detained pending trial due to a series of violations of the conditions of his pretrial release. On December 13, 2021, this Court held a detention hearing after Urban faced allegations he committed traffic violations, including fleeing from officers, tested positive for THC, and missed mental health appointments. Instead of ordering Urban detained, the Court imposed additional conditions of release, including home detention. On March 30, 2022, Urban again faced a detention hearing after his request to attend a family reunion was denied and he nevertheless travelled away from his place of home detention, and again tested positive for THC. Urban was found to have committed the violations outlined by the United States Probation Officer and remanded to custody. Along with the reasons put forth at both detention

hearings, the following analysis supports Urban's detention, notwithstanding any potential release under Section 3142(i).

The Court must order detention if it determines there is probable cause to believe Urban committed a federal, state, or local crime while on release, or finds by clear and convincing evidence that he has violated a condition of his release *and* the Court further finds that based upon the factors set forth in 18 U.S.C. § 3142(g) no condition or combination of conditions of release will assure[3] Urban will not flee or pose a danger to any other person or the community, or that Urban is unlikely to abide by any conditions or combinations of conditions of release. 18 U.S.C. § 3148.

18 U.S.C. § 3142(g) enumerates several factors to be considered when determining whether there are conditions of release that will reasonably assure the safety of any other person and the community, including:

> (1) the nature and circumstance of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

---

[3] While Section 3142 requires the Court to look to whether there are any conditions or combinations of conditions that will provide "reasonable assurances," Section 3148 refers only to assurances. However, the Court has considered whether there are any conditions or combinations of conditions that would provide reasonable assurances, and has found none.

18 U.S.C. § 3142(g).

As 18 U.S.C. § 3148(b)(2)(A) requires, the Court went through each of these factors at the hearing on this matter. Counsel's arguments concerning conditions of release were considered. However, all proposed conditions require some degree of self-compliance on Urban's part, and history suggests self-compliance is not likely.

As 18 U.S.C. § 3148(b)(2)(B) requires, the Court also considered whether Urban was likely to abide by any condition or combination of conditions of release. For similar reasons, the Court found detention warranted under Section 3148(b)(2)(B) given Urban's history of non-compliance.

Of course, all this simply indicates that Urban is properly detained under the Bail Reform Act. The Court must still consider whether temporary release will become necessary for compelling reasons under Section 3142(i). At the most recent status hearing, the Court was informed that Urban was to be transported back to the MCC as part of his return to the district. The current records suggest that the transfer to Colorado occurred based upon information that may not have accounted for MCC Chicago's real-time ability to undertake such an evaluation. It would be wise for the BOP, or counsel, to directly confer with the MCC to see if its reported openness to evaluate Urban stands.

Accordingly, the Court **GRANTS for relief different than requested** the Motion for Reconsideration of Order for Competency Evaluation [DE 71] and **ORDERS** that Cliff Derek Urban be returned to the Northern District of Indiana, as directed in the Court's May 20, 2022 order [DE 80].

So ORDERED this 26th day of May, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT